**Selestino Gutierrez TORRES,
Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 01–11–00361–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

March 29, 2012.

Petition for Discretionary Review
Refused Sept. 19, 2012.

Jonathan L. Munier, Attorney at Law, Houston, TX, for Appellant.

Melissa Parker Hervey, Assistant District Attorney, Houston, TX, for Appellee.

Panel consists of Chief Justice RADACK and Justices HIGLEY and BROWN.

## OPINION

LAURA CARTER HIGLEY, Justice.

Appellant, Selestino Gutierrez Torres, was charged by indictment with murder. Appellant pleaded guilty to the charge, but elected to have his punishment determined by a jury. The jury assessed punishment at life imprisonment. In two issues, appellant argues (1) the trial court erred by denying his request for an instruction on spoliation of evidence and (2) the trial court erred by denying his motion for new trial based on jury misconduct.

We affirm.

## Background

Appellant had dated Michelle Lira, complainant, off and on for a period of approximately eight years. In June 2009, appellant and Lira broke off their relationship for the last time. Appellant began dating another woman and moved in with her. Appellant and Lira continued to call, text, and email each other during this time.

Around July 2, 2009, in the evening, Donna Bell, a resident of the neighborhood Lira lived in was walking her dog with her son. They passed by Lira's residence. As they passed by, Bell saw appellant rise up from some bushes beside Lira's home, looking in the window of the home. Appellant and Bell made eye contact, and Bell said "hello." Appellant did not respond.

On July 6, 2009, Lira and her mother were leaving their home to go to work. It was around 7:00 in the morning. Lira's mother was driving the car. Both front side windows were partially open. As they were backing up out of the garage, appellant rushed up to the driver's side window with a crazed look on his face. Appellant began insisting that he talk to Lira. Lira's mother backed out of the garage. Appellant approached Lira on the front passenger side of the car.

Appellant began insisting that Lira get out of the car. Lira's mother urged her to stay in the car. Lira refused to get out. Lira's mother told him they were leaving and that the two of them could talk when

they got back that evening. Appellant then asked for a ride to his car, indicating it was "back there somewhere." Finally, appellant asked Lira, "Do you want to talk to me?" Lira refused.

Appellant then reached into the front of his pants, pulled out a gun, put it through the window opening, and began to repeatedly shoot Lira. Lira's mother cursed him, and appellant began shooting her as well. Lira's mother attempted to back the car out of the driveway. Appellant continued firing. Once the car was in the street, Lira's mother attempted to put the car in drive to hit appellant, but she began to pass out and missed him.

Appellant continued to shoot until he ran out of bullets. Then he walked away, the gun still in his hands.

Before the police located appellant, they found his truck. Investigators with the Harris County Sheriff's Office obtained a warrant to search appellant's truck. The truck was taken to a Harris County Sheriff's Office facility. There were numerous documents and a scrap book in the truck. Investigators searched through the contents of the truck for "items concerning firearms or a shooting offense." Investigators collected some items. Whatever they did not collect was left in the truck. Appellant alleges that the documents that would have been useful to him during the trial on punishment were in the truck.

After the search of the truck was concluded, it was turned over to a wrecker company that had a contract with Harris County to handle vehicles that have been examined. The truck was cleared to be released to the owner. The evidence at trial shows that the wrecker company made an effort to contact the owner of the vehicle, which was appellant.

## Spoliation Instruction

In his first issue, appellant argues the trial court erred by denying his request for an instruction on spoliation of evidence.

### A. Standard of Review

■■ Charge error is reviewed under the standard set forth in *Almanza v. State*, 686 S.W.2d 157 (Tex.Crim.App.1985). Under *Almanza*, we must first determine whether error exists in the jury charge. *See id.* at 171. If so, we then determine whether the harm was sufficient to require reversal. *Id.* If the error is properly preserved by an objection to the charge, then a showing of only some harm is sufficient to require reversal; if, however, the error is not properly preserved, then a showing of egregious harm is required for reversal. *Id.*

### B. Analysis

■ Assuming without deciding that a jury instruction is a proper remedy when spoliation of evidence exists,[1] we hold there is no evidence of spoliation.

■ Spoliation of evidence concerns the loss or destruction of evidence. *See White v. State*, 125 S.W.3d 41, 43–44 (Tex. App.-Houston [14th Dist.] 2003, pet. ref'd). When the spoliation concerns potentially useful evidence, the defendant bears the burden of establishing the State lost or destroyed the evidence in bad faith. *Ex*

---

1. *See Pena v. State*, 226 S.W.3d 634, 655 (Tex. App.-Waco 2007), *rev'd on other grounds*, 285 S.W.3d 459 (Tex.Crim.App.2009) (holding jury instruction is one of three possible remedies for spoliation); *White v. State*, 125 S.W.3d 41, 43 (Tex.App.-Houston. [14th Dist.] 2003, pet. ref'd) (holding no spoliation in con-

text of jury instruction request without reaching whether instruction is appropriate remedy); *see also Sereal v. State*, No. 01–09–00192–CR, 2011 WL 1234739, at *4 (Tex. App.-Houston [1st Dist.] Mar. 31, 2011, pet. ref'd) (mem. op., not designated for publication) (citing *White* ).

*parte Napper,* 322 S.W.3d 202, 229 (Tex. Crim.App.2010).

While appellant alleged that the State lost or destroyed evidence, there was no evidence presented to establish this claim. After the crime occurred, investigators with the Harris County Sheriff's Office obtained a warrant to search appellant's truck. The truck was taken to a Harris County Sheriff's Office facility. There were numerous documents and a scrap book in the truck. Investigators searched through the contents of the truck for "items concerning firearms or a shooting offense." Investigators collected some items. Whatever they did not collect was left in the truck. Appellant alleges that certain documents that would have been useful to him during the trial on punishment were in the truck. These documents included his insurance policy, some photographs of him with his son, and a scrapbook.

After the search of the truck was concluded, it was turned over to a wrecker company that had a contract with Harris County to handle vehicles that have been examined. The truck was cleared to be released to the owner. The evidence shows that the wrecker company made an effort to contact the owner of the vehicle, which was appellant.

There is no evidence of what happened to the vehicle or its contents following this. The record is silent as to whether the truck was returned to appellant or someone on his behalf, is still at the wrecker's lot, or had been otherwise disposed of. In other words, there is no evidence that the documents appellant claims were relevant were lost or destroyed much less lost or destroyed by the State in bad faith.

■ Moreover, there is no proof that the items that appellant complains were disposed of were ever in the car. For the insurance policy, appellant's only state-

ment was that he did not know where it was and "assume[d] it was in the briefcase," which was in his truck. Appellant did not testify about the location of the photographs or the scrapbook. Instead, on appeal, appellant cites to the portions of the record where his trial attorney asserts the items were in the truck while cross-examining different witnesses for the State. None of the witnesses, however, testified that those items were in fact in the car. "Questions or statements of counsel not under oath do not constitute evidence." *Delgado v. State,* 544 S.W.2d 929, 931 (Tex.Crim.App.1977).

Without any showing that the relevant items were actually in the truck and without any showing that the truck was lost, destroyed, or otherwise unavailable, there is no proof of spoliation. *See Ex parte Napper,* 322 S.W.3d at 229 (holding defendant must show evidence was *lost or destroyed* by State in bad faith).

We overrule appellant's first issue.

### Jury Misconduct

■ In his second issue, appellant argues the trial court erred by denying his motion for new trial based on jury misconduct. We hold that appellant has failed to present a sufficient record to establish any error.

Appellant asserts that, while it was deliberating, the jury sent the trial court a note asking how much time appellant would serve before being eligible for parole if appellant were given a life sentence. Appellant moved for a new trial, asserting, in part, that the jury was considering matters outside the record in determining punishment. Appellant acknowledged in his motion for new trial and on appeal, however, that there is no evidence in the record of the note or any response from the trial court.

It is the appellant's burden "to bring forward a record on appeal sufficient to show that the trial court erred." *Amador v. State,* 221 S.W.3d 666, 675 (Tex. Crim.App.2007). "A motion for new trial is a prerequisite to presenting a point of error on appeal only when necessary to adduce facts not in the record." TEX. R.APP. P. 21.2. At a hearing on a motion for new trial, the trial court "may receive evidence by affidavit or otherwise."[2] TEX.R.APP. P. 21.7.

Appellant never presented any evidence to establish that the alleged misconduct occurred. Instead, appellant requested in his motion that the trial court take judicial notice of the note "[i]f or when the note is located." Because there is no evidence in the record that the alleged jury misconduct actually occurred or any action taken by the trial court in response to the alleged misconduct, there is nothing presented for our review.

We overrule appellant's second issue.

### Conclusion

We affirm the judgment of the trial court.

---

2. There is no evidence in the record that a hearing was held on the motion for new trial. Appellant's complaint on appeal, however, does not concern whether the trial court erred by failing to hold a hearing on the motion for new trial. Instead, his complaint concerns whether the trial court erred in denying his motion for new trial.