**Opinion issued November 26, 2024**



In The

# Court of Appeals

For The

# First District of Texas

————————————

**NO. 01-23-00808-CR**

————————————

**MARCELINO GAMBOA, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 300th District Court**
**Brazoria County, Texas**
**Trial Court Case No. 92538-CR**

**MEMORANDUM OPINION**

Marcelino Gamboa appeals his convictions for aggravated sexual assault and indecency with a child. He argues that the evidence presented at trial was legally insufficient to support the convictions and that he received ineffective assistance of counsel. We affirm his convictions.

## BACKGROUND

A grand jury indicted Gamboa for the offenses of aggravated sexual assault and indecency with a child. *See* TEX. PENAL CODE §§ 21.11(a)(1), 22.021(a)(1)(B)(i). The indictment alleged that Gamboa digitally penetrated E.M., a child younger than 14 years of age, and caused her to engage in sexual contact with him. Gamboa waived his right to a jury, and his case was tried to the bench.

E.M. testified at trial. Gamboa is her step-grandfather; he is married to E.M.'s paternal grandmother. When she was younger, E.M. lived with her mother, but every other weekend she would stay at her father's house, where her grandmother and Gamboa also lived.

E.M. testified that when she was about eight or nine years old, Gamboa took her and her siblings, one at a time, for rides around the neighborhood in a four-wheeler. When E.M. was riding with Gamboa in the four-wheeler, he stopped in front of a house that was still under construction. She followed him behind the house and into the backyard. E.M. testified, "And then he pulls my pants down, and he starts touching me." She explained that he touched her "[i]n [her] vagina" with his fingers.

E.M. further testified that, every other weekend when she stayed at her father's house, Gamboa would touch her whenever she was alone at night. Gamboa would put his hand under her clothes and touch her inside her vagina.

On one occasion, E.M. was alone during the day in her grandmother's bedroom. Gamboa came into the room, and "made [E.M.] touch him on—with [her] hands on his penis." She testified that all of these incidents occurred from the time she was about eight years old until she was ten years old.

Years later, when E.M. was 16 years old, she told her older brother about the incidents with Gamboa. E.M.'s older brother encouraged E.M. to tell their mother about the incidents, which she did that same day.

E.M.'s mother, Sara, also testified at trial. Sara said that one day, when she came home from work, E.M. looked as if she had been crying. She asked E.M. what was wrong, and, according to Sara, E.M. reluctantly told Sara "that [Gamboa] had sexually abused her, that he had touched her vaginal area several times, and that this had gone on for a long period of time every time she would go to her dad's house." E.M. told Sara this started when E.M. was eight years old. Sara further testified that E.M. told her "there were times that [Gamboa] would touch her in her private parts. She said that there were times that he would make her do things to him . . . that he would make her touch his private parts," specifically, touch his penis with her hands.

The day after E.M. told Sara about these incidents, a group of E.M.'s family members confronted Gamboa at his apartment. E.M., Sara, E.M.'s older brother, and E.M.'s father all went to this confrontation. E.M.'s older brother recorded the conversation, which was partly in English and partly in Spanish. At trial, the

3

prosecutors played this recording, and Sara translated parts of it. Sara explained that she understood and could speak Spanish, although she was not fluent. Among other things, Sara explained that in the recording, Gamboa said, "I touched her, and I can assure you that I did that," and Gamboa was "basically saying, 'I touched her inappropriately.'"

E.M.'s older brother testified at trial, and he discussed the recorded confrontation with Gamboa. E.M.'s older brother testified that he could speak Spanish and had no trouble understanding what was going on in the recording. He testified that Gamboa confessed in the first minute of the recording. According to E.M.'s older brother, Gamboa said, "Look, I know what I did was wrong and I did touch her, but I'm a changed man. I'm a man of God now."

Investigator F. Vargas, a deputy in the Brazoria County Sheriff's Office, also testified about the recording at trial. She testified that she could speak and understand Spanish. She explained the recording was Gamboa's verbal confession. Prosecutors played parts of the recording for Vargas, and she translated. She explained that Gamboa admitted to touching E.M. in a sexual way but denied penetration. She also said Gamboa asked for forgiveness for the errors he committed, which, in the context of the conversation, meant sexual assault.

The trial court found Gamboa guilty on both indicted offenses, aggravated sexual assault and indecency with a child. Gamboa now appeals his convictions.

**DISCUSSION**

**A.     Sufficiency of the Evidence**

*Applicable Law and Standard of Review*

In a legal-sufficiency review, we view the evidence in the light most favorable to the verdict to determine whether, based on the evidence and reasonable inferences from it, a rational factfinder could have found the essential elements of the crime proved beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Baltimore v. State*, 689 S.W.3d 331, 341 (Tex. Crim. App. 2024). During a bench trial, the trial court is the sole factfinder, and the trial court alone assesses the witnesses' credibility and decides how much weight to give their testimony. *Prestiano v. State*, 581 S.W.3d 935, 941 (Tex. App.—Houston [1st Dist.] 2019, pet. ref'd). When conducting a legal-sufficiency review, we may not reevaluate the weight and credibility of the evidence or substitute our judgment for that of the factfinder. *Melgar v. State*, 593 S.W.3d 913, 920 (Tex. App.—Houston [14th Dist.] 2020, pet. dism'd).

A child victim's uncorroborated testimony alone is sufficient to support a conviction for a sexual offense. *Gonzalez v. State*, 522 S.W.3d 48, 57 (Tex. App.—Houston [1st Dist.] 2017, no pet.); *see also* TEX. CODE CRIM. PROC. art. 38.07(b)(1) (providing that if victim is age seventeen or younger, requirement that victim inform another person of alleged offense within one year does not apply).

5

Testimony from an outcry witness alone can also be legally sufficient evidence to support a conviction. *Rodriguez v. State*, 819 S.W.2d 871, 873 (Tex. Crim. App. 1991); *Eubanks v. State*, 326 S.W.3d 231, 241 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd). An outcry witness is the first person over the age of 18, other than the defendant, to whom the child spoke about the offense. *See* TEX. CODE CRIM. PROC. art. 38.072, § 2(a). Outcry testimony admitted as substantive evidence does not need to be corroborated or substantiated by the child or by independent evidence. *Eubanks*, 326 S.W.3d at 241.

A person commits the offense of aggravated sexual assault if the person intentionally or knowingly causes the penetration of the sexual organ of a child by any means. *See* TEX. PENAL CODE § 22.021(a)(1)(B)(i). A person commits the offense of indecency with a child if the person, with intent to arouse or gratify the sexual desire of any person, causes a child to engage in sexual contact. *See id.* § 21.11(a)(1).

### *Analysis*

Gamboa argues the evidence to support his convictions is not legally sufficient because E.M.'s testimony was vague, not credible, uncorroborated, and lacking in detail.

We first note that, despite Gamboa's arguments, a child victim's uncorroborated testimony alone is sufficient to support a conviction for a sexual

offense. *Gonzalez*, 522 S.W.3d at 57. Therefore, even if E.M.'s testimony were uncorroborated, that would not render her testimony insufficient. As for credibility, the trial court was the exclusive judge of the credibility of the witnesses, and we may not reevaluate their credibility on appeal. *Prestiano*, 581 S.W.3d at 941; *Melgar*, 593 S.W.3d at 920.

As to E.M.'s testimony being vague and lacking in detail, we disagree. Her testimony was direct, specific, and clear. She testified that when she was about eight years old, Gamboa isolated her, pulled her pants down, and touched inside her vagina with his fingers. She also testified that for a period of several years, from when she was eight or nine years old until she was ten, she would spend every other weekend at her father's house, and whenever she was alone, Gamboa would touch her. He would put his hand inside her clothes and touch her inside her vagina. On one occasion, he made her touch his penis with her hands. E.M.'s testimony alone is sufficient to allow a rational factfinder to find the elements of each alleged offense beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319; *Baltimore*, 689 S.W.3d at 341.

Additionally, the State presented outcry testimony from E.M.'s mother, Sara. Outcry testimony can be legally sufficient evidence to support a conviction, even without corroboration. *Rodriguez*, 819 S.W.2d at 873; *Eubanks*, 326 S.W.3d at 241. Sara testified that E.M. told her that Gamboa "had sexually abused her, that he had

7

touched her vaginal area several times, and that this had gone on for a long period of time every time she would go to her dad's house." E.M. also told Sara that "there were times that [Gamboa] would touch her in her private parts" and that Gamboa would make E.M. touch his penis with her hands. E.M. told Sara this began when she was eight years old and lasted two to three years.

From either E.M.'s testimony or Sara's testimony, a rational factfinder could find the essential elements of both aggravated sexual assault and indecency with a child proved beyond a reasonable doubt, as the trial court did here. *See Jackson*, 443 U.S. at 319; *Baltimore*, 689 S.W.3d at 341. Therefore, the evidence presented at trial was legally sufficient to support Gamboa's convictions for both offenses. We overrule Gamboa's first issue.

## B. Ineffective Assistance of Counsel

### *Applicable Law and Standard of Review*

The Sixth Amendment of the United States Constitution guarantees an accused the right to reasonably effective assistance of counsel in criminal prosecutions. U.S. CONST. amend. VI; *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011) (stating that right to counsel "does not provide a right to errorless counsel, but rather to objectively reasonable representation"). To show ineffective assistance of counsel, a defendant must demonstrate that both: (1) his counsel's performance fell below an objective standard of reasonableness; and (2) there is a

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–88, 694 (1984); *Lopez*, 343 S.W.3d at 142. Reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. An appellant bears the burden of proving both prongs by a preponderance of the evidence. *Jackson v. State*, 973 S.W.2d 954, 956 (Tex. Crim. App. 1998) (per curiam); *Guzman v. State*, 539 S.W.3d 394, 406 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd). Failure to establish one prong prohibits a finding that the representation was ineffective. *Lopez*, 343 S.W.3d at 142; *Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009) ("An appellant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other prong.").

Texas Rule of Evidence 1009 addresses the admissibility of foreign language documents. A party may, at least 45 days before trial, serve on all parties a translation of a foreign language document, as well as the document itself, and a qualified translator's affidavit or declaration setting forth the translator's qualifications and certification that the translation is accurate. TEX. R. EVID. 1009(a). But the rule "does not preclude a party from offering the testimony of a qualified translator to translate a foreign language document." TEX. R. EVID. 1009(e).

*Analysis*

Gamboa argues his trial counsel was ineffective for failing to obtain a written translation of the recording of the confrontation during which he supposedly admitted to the alleged offenses. His trial counsel acknowledged in a motion for continuance of the trial setting that "[z]ealous advocacy" required him to "have a transcript to effectively cross-examine the State's witnesses." The trial court granted the continuance, but—the record does not disclose why—a written translation under Rule 1009(a) was not obtained.

Instead, under Rule 1009(e), the prosecutors played the recording and had several witnesses translate during their testimony. *See Castrejon v. State*, 428 S.W.3d 179, 185 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (explaining that Rule 1009 does not require written translation of recording under subsection (a) when witness interprets during live testimony at trial under subsection (e)). Gamboa argues the State used this witness-translated testimony to "bolster" its case against him, which left the trial court to "speculate as to the true meaning of the recording." Gamboa argues, vaguely, that the lack of a written translation shows the "harm that was done," that it "clearly prejudiced" his defense, and that it affected the outcome of the trial.

Even assuming Gamboa had established the first prong of the *Strickland* test with his counsel's failure to obtain a written translation of the recording under Rule

1009(a), he has not shown the second prong, that but for his counsel's errors, there is a reasonable probability that the result of the proceeding would have been different. *See Strickland*, 466 U.S. at 694; *Lopez*, 343 S.W.3d at 142. There was sufficient evidence to support Gamboa's convictions, as we discussed above, without the witnesses' translations of the recording. E.M.'s testimony and the testimony of the outcry witness, E.M.'s mother Sara, were each sufficient to support his convictions. Gamboa has not shown how the outcome would have been different with a written translation. He acknowledges that the witnesses' translations merely "bolstered" but did not prove the State's case against him. Therefore, Gamboa has not established the second prong of the *Strickland* test. *See, e.g.*, *Jones v. State*, 466 S.W.3d 252, 269 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd) (overruling defendant's ineffective-assistance claim because, even if counsel erred in failing to object to certain evidence, other evidence was sufficient to support conviction, so defendant did not establish second *Strickland* prong). Because Gamboa failed to establish one prong of the *Strickland* test, he has not shown that his representation was ineffective. *See Lopez*, 343 S.W.3d at 142; *Williams*, 301 S.W.3d at 687. We therefore overrule Gamboa's second issue.

## CONCLUSION

We affirm the trial court's judgments of conviction.

Gordon Goodman
Justice

Panel consists of Chief Justice Adams and Justices Goodman and Guerra.

Do not publish. TEX. R. APP. P. 47.2(b).