**AFFIRMED AS MODIFIED and Opinion Filed April 15, 2020**



In The

### Court of Appeals
### Fifth District of Texas at Dallas

_____

## No. 05-19-00191-CR
_____

**JOHN WHEELER, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 283rd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F-1710261-T**

## MEMORANDUM OPINION

Before Justices Myers, Whitehill, and Pedersen, III
Opinion by Justice Whitehill

A jury found appellant John Wheeler guilty of burglary of a habitation, found

two enhancement paragraphs true, and assessed punishment at seventy years in

prison. Appellant raises fourteen issues on appeal. The State asks us to modify the

judgment to correct certain errors. We overrule appellant's issues, sustain the State's

cross-issue, and affirm the judgment as modified.

### I. BACKGROUND

Trial evidence showed that during the night of May 22–23, 2017, Kent and

Joan Domingue's Toyota 4Runner was stolen from their Addison residence's closed,

attached garage. Security cameras took five short video recordings that night showing a white male wearing a baseball cap walking around the front of the Domingues' house. A sixth video shows the 4Runner backing down the driveway into the street, but the driver is not clearly visible.

The next morning, Kent discovered that the garage door was open and the 4Runner was gone. Kent also found that the garage door opener was missing from the Domingues' other vehicle, which was parked in the driveway outside the garage.

The 4Runner was recovered about a week later after being reported to the Frisco police as an abandoned vehicle. After picking the vehicle up, Joan found an apartment complex visitor's parking pass inside.

Police investigation led to appellant's indictment for burglary of a habitation. A jury found appellant guilty, found two enhancement paragraphs true, and assessed punishment at seventy years in prison. Appellant timely appealed.

## II. ANALYSIS

### A. Issue One: Was the evidence sufficient to support appellant's conviction?

Yes, the evidence that appellant was the culprit was sufficient for the jury to find appellant guilty beyond a reasonable doubt.

#### 1. Applicable Law

Our standard of review requires us to decide whether, viewing all the evidence in the light most favorable to the verdict, any rational trier of fact could have found the crime's essential elements beyond a reasonable doubt. *Zuniga v. State*, 551

S.W.3d 729, 732 (Tex. Crim. App. 2018). The jurors are the exclusive judges of the facts, the witnesses' credibility, and the testimony's weight. *Id*. at 733. Direct and circumstantial evidence are equally probative, and circumstantial evidence alone can be sufficient to establish guilt. *Johnson v. State*, 560 S.W.3d 224, 226 (Tex. Crim. App. 2018). Legally sufficient evidence need not exclude every conceivable alternative to the defendant's guilt. *Id*.

A person commits burglary of a habitation if, without the owner's effective consent, he enters a habitation with intent to commit theft or enters a habitation and commits or attempts to commit a theft. TEX. PENAL CODE § 30.02(a)(1), (3). Appellant doesn't challenge the sufficiency of the evidence that the crime was committed; he argues only that the evidence is insufficient to establish that he did it.

## 2. The Trial Evidence

### a. Security Videos and Photographs

The evidence included six security videos showing the front of the Domingues' home from around 3:30 to 4:20 a.m. the night of the burglary. The State also created two photographs from the videos and introduced them into evidence. Those photos and videos show a person walking around in front of the house and on the driveway. Although the photos and videos are grainy, they provide enough detail that it was the jury's prerogative to weigh the evidence and decide whether appellant was the person depicted.

### b.    The Apartment Visitor's Parking Pass

The apartment visitor's parking pass found in the stolen 4Runner connected appellant to the crime. The parking pass listed "Wyndham" as the "apt. name" and "213" as the "apt. #." It was dated 5/23/17—the day the car was stolen—and expired 5/30/17.

Elizabeth Martinez testified that she managed the Wyndham on the Creek apartments on Ferris Branch Boulevard in Dallas. She identified the parking pass as one used at those apartments, and she recognized an apartment employee's signature on the pass. She also testified that a person named Laura Wheeler was living in apartment 213 in May 2017 and that Rachel King and Laura Wheeler were mother and daughter (although she couldn't remember which was which).

The apartment's maintenance history listed many maintenance requests regarding the apartment from 2016 to 2018, and some requests specifically reference Laura Wheeler or Rachel King. The name "Rachel Wheeler King" appears at the end of the maintenance history document.

Detective Rick McCafferty testified that he investigated this crime. After he got the parking pass, he went to the Wyndham on the Creek apartments and learned that apartment 213 was leased to Rachel King. McCafferty ran computer database searches and found that one of King's associates was "John Wheeler," a white male whose age, height, and weight were about the same as the person shown in the Domingues' security videos and who had an address off of Ferris Branch Road. He

looked at King's Facebook page and found photos that appeared to be of John Wheeler. The person in the security videos "[a]bsolutely" bore a resemblance to the person identified as John Wheeler on King's Facebook page.

McCafferty also testified that he twice spoke to "Jose," a maintenance man at the apartment complex. The first time, McCafferty showed Jose a picture of John Wheeler, and Jose said he didn't recognize him. But in their second conversation, Jose told McCafferty that he had done some maintenance work in "that apartment" and seen Wheeler there asleep on the couch.

A jury could reasonably conclude that (i) the parking pass found in the car connected the burglary to someone who visited apartment 213 at the Wyndham on the Creek apartments and (ii) appellant associated with that apartment's residents and had been to that apartment.

### c.      The Jailhouse Calls

The State introduced two inmate telephone call recordings from the Dallas County jail. Although appellant contested the recordings' authentication, the State produced reports showing that someone using appellant's personal identification number made the calls.

In the first recording, a person said, "The one in Addison, that—that dude don't have nothing but a film of me walking beside a house. What the hell is that supposed to do?" In the second recording, the person said, "You know the video

that they say they have? Oh my God. It doesn't. It shows me—it, it, it shows what appears to be a white male walk by the front of a house. That's it."

A jury could reasonably conclude that appellant is the speaker in the recordings and his statements implicitly admit that he is the person depicted in the Domingues' security videos from the night of the burglary.

### 3. Applying the Law to the Facts

We hold that the foregoing evidence was sufficient to allow a reasonable jury to conclude beyond a reasonable doubt that appellant broke into the Domingues' garage and took their 4Runner. The jury could reasonably conclude that the videos showed appellant at the scene during the night in question and showed the 4Runner being driven away within forty-five minutes of appellant's first appearance on the videos. The parking pass found inside the abandoned 4Runner also connects appellant to the burglary and theft.

Appellant's arguments to the contrary focus on alternative theories and alleged weaknesses in the State's investigation and trial presentation. They include the following points:

- At trial the State did not call Jose, the apartment maintenance worker who allegedly saw appellant in apartment 213. And Jose gave the detective conflicting stories about whether he had ever seen appellant.

- A driver's license issued to Andrea Stewart was also found in the abandoned 4Runner, but the detective did not investigate her. However, the State called Stewart, an African-American woman, to testify at the trial, and she said that she had lost her driver's

license in February or March 2017.  The jury could reasonably conclude she had nothing to do with the offense.

- The detective did not seek security videos from the Wyndham on the Creek apartments to see if the 4Runner ever appeared in them.

- The detective didn't order the 4Runner to be held for processing, and the police didn't test the vehicle's interior or the parking pass for fingerprints.

- The detective's testimony was inconsistent with his report, and he misrepresented the videos' contents in his arrest warrant affidavit.

We defer to the jurors as the exclusive judges of the facts and the testimony's weight.  *Zuniga*, 551 S.W.3d at 733.  And legally sufficient evidence need not exclude every conceivable alternative to the defendant's guilt.  *Johnson*, 560 S.W.3d at 226.  Applying these principles, we conclude that the evidence is legally sufficient and overrule appellant's first issue.

**B.    Issues Two and Three:  Did the trial court err by denying appellant's mistrial motions?**

No, the complained-of statements were not so inflammatory that they could not be cured by instructions to disregard.

Our standard of review is abuse of discretion.  *Archie v. State*, 340 S.W.3d 734, 738–39 (Tex. Crim. App. 2011).

Ordinarily a prompt instruction to disregard will cure any error associated with an improper question and answer.  *Ovalle v. State*, 13 S.W.3d 774, 783 (Tex. Crim. App. 2000) (per curiam).  Mistrial is the appropriate remedy when the

objectionable event is so emotionally inflammatory that curative instructions are unlikely to prevent the jury from being unfairly prejudiced against the defendant. *Archie*, 340 S.W.3d at 739; *see also Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009) (mistrial is appropriate remedy in extreme circumstances for a narrow class of highly prejudicial and incurable errors).

**1.    Appellant's second issue does not show an abuse of discretion.**

Appellant's second issue concerns the following exchange during Detective McCafferty's testimony.

Two photos created from the Domingues's security videos were admitted into evidence.  Then McCafferty testified without objection that the person in those photos "[a]bsolutely" resembled "the individual that was on Rachel Wheeler King's Facebook [page] identified as John Wheeler."  Next, McCafferty said he didn't see much hair sticking out from under the photographed person's baseball cap.  Then the prosecutor started to ask a question that assumed McCafferty had seen photos of appellant on Rachel Wheeler King's Facebook page:

> Q.    The photographs that you viewed of John Wheeler on Rachel Wheeler King's Facebook—
>
> Defense counsel:   Objection, Your Honor, from the witness testifying about what he observed on an unauthenticated piece of evidence.
>
> The Court:         Can I see the attorneys at the bench?
>
> (Discussion off the record.)
>
> Defense counsel:  Ask the jury to disregard the last answer by the detective.  [Which was that he didn't see much hair sticking out

–8–

from under the baseball cap worn by the person in the photos taken from Domingues' security videos.]

The Court: Ladies and gentlemen, if you would disregard the answer to the last question.

Defense counsel: And I move for a mistrial.

The Court: Denied.

Initially, we agree with the State that appellant didn't preserve error because he didn't object and seek a mistrial when the ground first became apparent—when McCafferty testified that the person in the security video photographs "[a]bsolutely" resembled the person identified as John Wheeler on Rachel Wheeler King's Facebook page. *See Griggs v. State*, 213 S.W.3d 923, 927 (Tex. Crim. App. 2007) (mistrial motion must be made as soon as grounds become apparent).

Moreover, even had appellant preserved error, we would reject his second issue. Appellant does not explain how the prosecutor's incomplete question, which assumed that McCafferty had seen appellant's picture on Rachel Wheeler King's Facebook page, was so emotionally inflammatory that a curative instruction could not have avoided prejudicing appellant. Appellant asserts only that the State erred by "presenting unauthenticated hearsay evidence that violated the Defendant's Sixth Amendment right to confront witnesses," which does not address the mistrial standard.

Additionally, appellant's request for a curative instruction was inaccurately directed to McCafferty's unobjected-to testimony about the security camera

–9–

photographs rather than the prosecutor's question. But in any event, the prosecutor's insinuation that McCafferty had seen appellant's photograph on Rachel Wheeler King's Facebook page wasn't so emotionally inflammatory that a curative instruction wouldn't have avoided any prejudice.

Because appellant didn't timely object, and because in any event the trial court didn't abuse its discretion by denying appellant's mistrial motion, we overrule appellant's second issue.

## 2. Appellant's third issue doesn't show an abuse of discretion.

Appellant's third issue focuses on McCafferty's testimony about State's Exhibit 36, a photograph of appellant that was not admitted into evidence:

Q. And, Detective, I'm showing you what's marked as State's Exhibit No. 36. Do you recognize State's Exhibit No. 36?

A. Yes, sir.

Q. And what is State's Exhibit No. 36?

A. It is a photograph of Mr. Wheeler.

Q. Is it a true and accurate photograph of John Wheeler?

A. Yes, sir.

Q. Did you see this photograph on a database with Mr. Wheeler's other personal information?

A. I did, yes, sir, through AIS. [Which the detective previously testified, on voir dire by defense counsel, was the "Adult Information System" for Dallas County.]

The State: State offers State's Exhibit No. 36 into evidence.

Defense counsel: May we approach the bench?

–10–

The Court:          You may.

(Discussion off the record.)

Defense counsel:    Ask the jury to disregard the comments based on the photo.

The Court:          You will please disregard the comments on State's Exhibit 36.

Defense counsel:    And once again, I have to move for a mistrial.

The Court:          Denied.

Appellant does not explain how this exchange prejudiced him, much less how anything said was so emotionally inflammatory that an instruction wouldn't have cured any prejudice. We see nothing inflammatory in this exchange, in which the State simply tried and failed to have a photograph, ostensibly of appellant, admitted into evidence.

Because the trial court did not abuse its discretion by denying appellant's mistrial motion, we overrule appellant's third issue.

## C.    Issue Four:  Did the trial court reversibly err by overruling appellant's hearsay objection to certain testimony?

No, because the evidence was not offered for a hearsay purpose and was harmless in any event.

The standard of review is abuse of discretion. *Ramos v. State*, 245 S.W.3d 410, 417–18 (Tex. Crim. App. 2008). We uphold the trial court's ruling is if it reasonably supported by the record and is correct under any applicable legal theory. *Id*. at 218.

Appellant complains about the following testimony by Detective McCafferty:

Q.    And as part of your investigation, did you receive information corroborating your belief that Mr. Wheeler resided at that address [the apartments off Ferris Branch Road]?

Defense counsel:   Once again, Judge, it's hearsay offered for the truth of the matter asserted.  A question such as what did you do next is a lot different than asking for what someone said or implying that they told them something.  And I object to it.

The Court:          Overruled.  You may answer, Detective.

The Witness:       One more time.

Q,    Ask it one more time?

A.    Yes, sir,

Q.    All right.  As a part of your investigation after speaking with anyone else at the apartment, did you receive any information that corroborated your belief that Mr. Wheeler resided at that address that we discussed?

A.    Yes, sir, I did.

Appellant argues that this was impermissible indirect hearsay testimony, apparently because it reveals that an unspecified person told McCafferty something relevant to appellant's residence.  *See* TEX. R. EVID. 801(d) (defining hearsay); *id*. 802 (hearsay is generally inadmissible).

The State responds that the testimony was offered for a non-hearsay purpose—to show how McCafferty identified appellant as a suspect—and not to prove that appellant lived at the apartments.  The State cites authority holding that police officers may testify to explain how an investigation began and how a defendant became a suspect without running afoul of the hearsay rule.  *See Lee v.*

–12–

*State*, 29 S.W.3d 570, 577–78 (Tex. App.—Dallas 2000, no pet.); *Cano v. State*, 3 S.W.3d 99, 110 (Tex. App.—Corpus Christi–Edinburg 1999, pet. ref'd).

We agree with the State. The State's purpose in offering the testimony was not to prove that appellant actually lived at the apartments but to show why the police viewed appellant as a suspect—because the information received linked appellant to the parking pass found inside the stolen 4Runner. Thus, the trial court did not abuse its discretion by overruling appellant's hearsay objection.

Moreover, any error was harmless. Nonconstitutional error, such as admitting hearsay evidence, is harmless and must be disregarded if it did not affect appellant's substantial rights. *See* TEX. R. APP. P. 44.2(b). We affirm if, after examining the whole record, we have fair assurance that the error did not have a substantial and injurious effect or influence in determining the jury's verdict. *See Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002).

Here, the detective's testimony was cumulative of other evidence suggesting that appellant associated with someone living in the apartment complex and that a maintenance worker had seen appellant in the apartment identified on the parking pass. And the security videos and jailhouse telephone calls independently pointed to appellant as the culprit, so McCafferty's testimony probably didn't have a substantial and injurious effect on the jury's verdict.

For these reasons, we overrule appellant's fourth issue.

**D.** **Issues Five Through Thirteen: Did the trial court err by admitting two jailhouse phone call recordings and their associated call detail reports?**

No, the trial court did not abuse its discretion by concluding that the evidence was adequately authenticated and was not inadmissible hearsay.

In issues five through thirteen, appellant complains about the trial court's rulings overruling his objections to State's exhibits 37, 37A, 38, and 38A. Exhibits 37 and 38 are audio recordings that the State asserted were telephone calls appellant placed from the Dallas County jail. The "A" lettered exhibits are call detail reports associated with those calls; they show information such as the date and time of the phone call as well as the PIN and inmate's name associated with the call.[1]

Appellant's arguments are presented collectively and are not clearly associated with specific issues, so we address the arguments in the order presented.

### 1. Background

Before opening statements and out of the jury's presence, the trial court held a preliminary hearing on these exhibits' admissibility, and the following evidence was developed:

Darren Hodge, an investigator with the Dallas County District Attorney's office, testified that (i) he personally downloaded the audio recordings from the jail telephone system and (ii) the written reports were associated with those audio

---

[1] Appellant also purports to complain about the admission of exhibits 39 and 40, which were also phone call recordings, but the record shows that those exhibits were not admitted into evidence. Thus, we overrule issues five through thirteen to the extent they concern exhibits 39 and 40.

–14–

recordings. On cross-examination, he admitted that inmates occasionally get each other's PINs and use them to make telephone calls.

Scott Seacat testified that he was employed by the company that operates the Dallas County jail's inmate telephone system. He affirmed that the system was capable of making true and correct recordings on the dates in question. On cross-examination, he admitted that he was not trained to run systems checks each day and that the company has an on-site technician who knows more about that topic.

Finally, James Vignali testified that he was an Irving police officer who interviewed appellant in September 2017 about an auto theft case. That interview was audio recorded. For this trial, he refreshed his recollection by listening to part of that recording and then to State's exhibits 37 and 38 in this case. He opined that appellant was one of the speakers in exhibits 37 and 38.

At the end of the hearing, appellant lodged several objections to the exhibits. The trial court tentatively ruled that exhibits 37 and 38 would come in. Then the jury was brought in, and the trial continued.

Later that day, out of the jury's presence, the trial judge said that he had not found Vignali's testimony persuasive and that he had reached his tentative rulings based on the other preliminary hearing evidence.

The next day, Seacat and Hodge testified before the jury and established the same facts as at the preliminary hearing. During Hodge's testimony, the State offered State's exhibits 37, 37A, 38, and 38A into evidence. According to exhibits

37A and 38A, exhibit 37 was a telephone call associated with appellant's PIN made on August 14, 2017, and exhibit 38 was a telephone call associated with appellant's PIN made on September 27, 2017.

Appellant renewed his authentication objections, the trial court overruled them, and the exhibits were admitted.

### 2. Did the trial court abuse its discretion by overruling appellant's objections that the exhibits weren't sufficiently authenticated?

No, the evidence was sufficient to show that the exhibits were what they purported to be.

Evidence is not relevant, and thus not admissible, unless shown to be what its proponent claims it to be. *See* TEX. R. EVID. 402 (irrelevant evidence is not admissible); *Tienda v. State*, 358 S.W.3d 633, 638 (Tex. Crim. App. 2012) ("Evidence has no relevance if it is not authentically what its proponent claims it to be."). To satisfy this authentication requirement, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is. TEX. R. EVID. 901(a).

Evidence can be authenticated with "[e]vidence describing a process or system and showing that it produces an accurate result." TEX. R. EVID. 901(b)(9).

Moreover, in the case of audio recordings, voice identification may be based on what is said in the conversation. *Patrick v. State*, No. 05-18-00435-CR, 2018 WL 3968781, at *33 (Tex. App.—Dallas Aug. 20, 2018, no pet.) (mem. op., not

–16–

designated for publication); *see also* TEX. R. EVID. 901(b)(4) (evidence can be authenticated by its own contents, together with all the circumstances).

Here, the trial court could reasonably conclude that Hodge and Seacat adequately authenticated the audio recordings. They explained how the jail recording system worked and said that the system was capable of making accurate recordings on the dates in question, each inmate phone call had to be made with a specific inmate's PIN, and the two phone calls in question were made with appellant's PIN.

Additionally, the calls included discussions of facts relevant to this case, namely the security videos' content, which tended to show that appellant was the one speaking.

Thus, although appellant developed evidence that inmates occasionally use other inmates' PINs to make phone calls, the trial court could reasonably conclude that the State satisfied the authentication requirement for exhibits 37 and 38.

As for the call detail reports, exhibits 37A and 38A, Seacat identified them as informational reports generated about specific calls made using the Dallas County jail inmate telephone system. Hodge confirmed that they are reports associated specifically with the recordings in exhibits 37 and 38. The trial court could reasonably conclude that the State satisfied the authentication requirement for exhibits 37A and 38A.

We overrule issues five through thirteen to the extent appellant complains that exhibits 37, 37A, 38, and 38A weren't adequately authenticated.

### 3. Did the trial court abuse its discretion by overruling appellant's hearsay objections to exhibits 37 and 38?

No, appellant's statements in the recordings were an opposing party's statements and therefore not hearsay.

Appellant argues that his statements in the jailhouse recordings are hearsay and that the State didn't establish the exception to the hearsay rule for statements against interest. *See* TEX. R. EVID. 803(24). Thus, the recordings should have been excluded by the rule against hearsay. *See id.* 802.

The State responds, correctly, that appellant's own statements are not hearsay. The rules provide that a statement is not hearsay if it is offered against an opposing party and was made by that party in an individual or representative capacity. *See id.* 801(e)(2)(A). The trial court did not abuse its discretion by concluding that appellant's recorded statements meet those requirements.

We overrule issues five through thirteen to the extent they complain that exhibits 37 and 38 should have been excluded as hearsay.

### E. Issue Fourteen: Did the trial court err by denying appellant's request for a spoliation jury instruction?

No, because the trial court could reasonably conclude the record did not support a finding that spoliation occurred.

### 1. Applicable Law

We review the trial court's refusal to submit a defensive instruction for abuse of discretion. *See Wesbrook v. State*, 29 S.W.3d 103, 122 (Tex. Crim. App. 2000). A trial court abuses its discretion only when no reasonable view of the record could support its ruling. *Int'l Fid. Ins. Co. v. State*, 586 S.W.3d 9, 12 (Tex. Crim. App. 2019).

"Spoliation" concerns evidence's loss or destruction. *Guzman v. State*, 539 S.W.3d 394, 401 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd). The defendant bears the burden of showing that (i) the State lost or destroyed evidence in bad faith, (ii) the evidence was favorable and material to the defense, and (iii) the evidence's exculpatory value was apparent before the evidence was destroyed. *See id*.

One possible sanction for spoliation is a jury instruction that courts variously call a "missing-evidence, adverse-inference, or spoliation instruction." *Arthur v. State*, No 05-18-00075-CR, 2019 WL 3729499, at *8 (Tex. App.—Dallas Aug. 7, 2019, no pet.) (mem. op., not designated for publication).

### 2. Applying the Law to the Facts

Appellant requested an adverse inference instruction based on the following facts:

The arrest warrant, which was admitted into evidence, contains facts the affiant said were obtained from Detective McCafferty. The affidavit says, "Domingue provided a copy of surveillance video of the offense to the Police. . . .

–19–

Wheeler is the person seen on video entering the garage, and taking the vehicle without Domingue's consent."

Kent Domingue testified about the security videos, and although his cross-examination testimony about them was somewhat confusing, he eventually made it clear that the six short videos that he gave the police were the only ones that existed. Joan Domingue also confirmed that the six videos that the Domingues gave to the police were the only ones they had. Kent also testified that he didn't have a video of anyone entering his garage. The six videos admitted into evidence don't show the garage door or entrance because the cameras are pointing away from the house and down the driveway; thus, they don't show anyone entering the garage. And although the last video shows the 4Runner backing out down the driveway, it doesn't permit identification of the driver.

Appellant argues that the arrest warrant shows that another video purportedly showed him entering the garage and taking the 4Runner, and the State's nonproduction of that video shows spoliation.

The State responds that (i) appellant did not adequately demonstrate that the alleged video existed and (ii) the evidence supports a conclusion that it didn't. We agree with the State. Based on this record, the trial court could reasonably have concluded that no security videos ever existed except the ones admitted into evidence and that the arrest warrant affidavit's contrary statements were incorrect.

–20–

Under this view of the record, there was no spoliation, and appellant was not entitled to an instruction.[2]

There is a second reason the trial court did not abuse its discretion. Because the content of the supposedly lost or destroyed video is unknown, the evidence is considered only "potentially useful" to appellant's defense, and to obtain relief appellant had to show bad faith rising to the level of an improper motive, such as personal animus against him or a desire to prevent him from obtaining potentially useful evidence. *Arthur*, 2019 WL 3729499, at *8. There is no evidence of such bad faith, so this deficiency also justified refusing appellant's spoliation instruction request. *See id*. at *9.

Because the trial court did not abuse its discretion by refusing to submit a spoliation instruction, we overrule appellant's fourteenth issue.

## F.     The judgment should be corrected.

The State raises one cross-point arguing that the judgment contains erroneous recitals regarding two enhancement paragraphs. We agree.

The indictment contained two enhancement paragraphs: one for a burglary conviction and one for an arson conviction. Appellant pled not true to both paragraphs, but the jury found both paragraphs true.

---

[2] When the charge conference ended, the trial judge said to appellant's counsel, "[Y]ou argue whatever you want during closing, but I'm not going to allow the [spoliation] instruction in there." Appellant's counsel did in fact argue that there was no video matching the description in the arrest warrant affidavit.

However, the judgment incorrectly recites "N/A" as to both enhancement paragraphs, both as to appellant's pleas and as to the jury's findings.

We have the power to correct the trial court's judgment to make the record speak the truth when we have the necessary information to do so. *See* TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993). Accordingly, we sustain the State's cross-point and correct the judgment as it requests.

## IV. CONCLUSION

We modify the judgment to reflect that appellant pled not true to two enhancement paragraph and the jury found both paragraphs true. We affirm the judgment as modified.

/Bill Whitehill/

BILL WHITEHILL
JUSTICE

Do Not Publish
Tex. R. App. P. 47.2(b)
190191F.U05

–22–



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

JOHN WHEELER, Appellant

No. 05-19-00191-CR        V.

THE STATE OF TEXAS, Appellee

On Appeal from the 283rd Judicial District Court, Dallas County, Texas
Trial Court Cause No. F-1710261-T.
Opinion delivered by Justice Whitehill. Justices Myers and Pedersen, III participating.

Based on the Court's opinion of this date, we **MODIFY** the trial court's judgment to read as follows:

"Plea to 1st Enhancement Paragraph:  **NOT TRUE**"
"Findings on 1st Enhancement Paragraph:  **TRUE**"
"Plea to 2nd Enhancement/Habitual Paragraph:  **NOT TRUE**"
"Findings on 2nd Enhancement/Habitual Paragraph:  **TRUE**"

We **AFFIRM** the judgment as modified.

Judgment entered April 15, 2020