**Opinion issued April 11, 2023**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-22-00219-CR

_____

**ISAIAS PINEDA, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 209th District Court**
**Harris County, Texas**
**Trial Court Case No. 1556925**

---

## MEMORANDUM OPINION

A jury found Isaias Pineda guilty of sexual assault of a child. The jury assessed his punishment at 20 years' imprisonment, and the trial court sentenced him in accordance with the jury's verdict. On appeal, Pineda argues that he received ineffective assistance of counsel. We affirm.

## Background

Pineda was charged with sexual assault of a child based on allegations from his fourteen-year-old cousin. He proceeded to a jury trial. At trial, the jury heard from responding officers, the complainant, the nurse who examined her a few days after the incident, the investigator who observed her forensic interview, and a DNA technician.

One evening in June 2017, Pineda picked up the complainant, his fourteen-year-old female cousin, so that she could spend a week of summer vacation with his family. Pineda was 44 years old at the time. On the way to his house, Pineda told the complainant that he had to stop at the barbershop where he worked. Nobody else was inside the barbershop when they went inside. Pineda offered his cousin tequila. Though she had never had it before, she drank the tequila. He then took her across the street to buy more alcohol from a corner store. Pineda purchased a six-pack of premixed and bottled vodka cocktails, and they returned to the barbershop. They drank the cocktails, and the complainant testified that it made her feel weak and out of control. Pineda began massaging his cousin's shoulders and used an electric massager on her shoulders. He then began massaging her chest with his hands. She asked Pineda to stop because it made her uncomfortable, but instead he pulled up her shirt and bra and began touching her chest. Pineda pulled down the complainant's pants and underwear and removed his own clothing from

the waist down. When the complainant felt pain, she realized that Pineda had inserted his penis into her vagina. Pineda assaulted his cousin for several minutes before ejaculating on her stomach.

The complainant cleaned herself off in a bathroom, and Pineda drove her to his house. It was after midnight. Several family members were at the house, but the complainant did not talk to them. Instead, she went upstairs and took a shower. She wrapped her shirt and bra inside the towel she had brought with her. She then put the bundle on the floor of the room where she was staying. She waited a few days to tell anyone what had happened because Pineda told her not to tell anyone. She eventually told her family, and the incident was reported to the police.

Law enforcement responded to Pineda's house where they interviewed the complainant. She disclosed the sexual assault, and law enforcement took her shirt and bra that she had been wearing on the night of the offense into evidence. After testing, Pineda's semen was found on the complainant's bra and shirt.

Law enforcement went to the barbershop and obtained video footage from the shop's security cameras. The video was played for the jury and shows that Pineda brought the complainant to the barbershop on the night of the assault. He had a bottle of liquor with him. He turned the lights off and massaged the complainant. His pants and belt were undone. The video does not show the actual

sexual assault. Law enforcement testified that there are unexplained gaps in the footage during the time the sexual assault occurred.

On the same day that she was interviewed by police, the complainant underwent a sexual assault examination. She again described the details of the assault to the examining nurse. There was no physical evidence of penetration. The nurse testified that the lack of evidence was likely due to the delay between the assault and examination and the fact that the complainant had showered, used the restroom, and changed clothes in between.

During trial, Pineda's attorney had a conversation outside the presence of the jury with the State and the judge regarding Pineda's cell phone. During the conversation, the prosecutor explained that while reviewing the evidence log over the weekend, she discovered that the State was in possession of a disk that she believed contained the forensic report from Pineda's cell phone. The cell phone had been seized and entered into evidence. After she found it, she met with Pineda's attorney and attempted to open the document on the disk. It was inaccessible. Neither attorney was able to access the document. The State did not know what the report contained, and the prosecutor told the trial court that she did not intend to admit it into evidence. Neither party offered the disk into evidence, and neither party objected. Neither party objected to the jury charge.

After closing statements, the jury found Pineda guilty of sexual assault and assessed the maximum punishment of 20 years' imprisonment. He appeals.

## Ineffective Assistance of Counsel

In his sole issue on appeal, Pineda argues that his trial counsel was ineffective because his counsel failed to request a spoliation instruction in the jury charge after the State discovered the dis containing forensic analysis of Pineda's cell phone. We disagree.

### A.    Standard of Review

The Sixth Amendment of the United States Constitution and the Texas Constitution guarantee a criminal defendant the right to reasonably effective assistance of counsel. U.S. CONST. amend. VI; TEX. CONST. art. I, § 10; *see Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011). The right to effective assistance of counsel requires objectively reasonable representation, not errorless performance. *Lopez*, 343 S.W.3d at 142 (citing *Strickland v. Washington*, 466 U.S. 668, 686 (1984), and *Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006)).

To establish that trial counsel provided ineffective assistance, an appellant bears the burden to demonstrate by a preponderance of the evidence that (1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687; *Lopez*, 343 S.W.3d at 142. An

5

appellant must establish both prongs before an appellate court will find counsel's representation to be ineffective. *Lopez*, 343 S.W.3d at 142 (citing *Strickland*, 466 U.S. at 687); *see Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009) ("An appellant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other prong.").

To satisfy the first prong, an appellant must show that his trial counsel's performance fell below an objective standard of reasonableness under the prevailing professional norms. *Strickland*, 466 U.S. at 687–88; *Lopez*, 343 S.W.3d at 142. Under the second prong, an appellant must demonstrate prejudice or "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *see Lopez*, 343 S.W.3d at 142. A reasonable probability is one sufficient to undermine confidence in the outcome. *Lopez*, 343 S.W.3d at 142.

For an appellate court to find that counsel was ineffective, "counsel's deficiency must be affirmatively demonstrated in the trial record; the court must not engage in retrospective speculation." *Id*. "It is not sufficient that appellant show, with the benefit of hindsight, that his counsel's actions or omissions during trial were merely of questionable competence." *Id.* at 142–43. (quoting *Mata v. State*, 226 S.W.3d 425, 430 (Tex. Crim. App. 2007)). Furthermore, a claim of

ineffective assistance of counsel also requires proof of prejudice. *Bone v. State*, 77 S.W.3d 828, 836–37 (Tex. Crim. App. 2002).

In most cases, the record on direct appeal is undeveloped and thus inadequate to prove a claim of ineffective assistance.[1] *See Menefield v. State*, 363 S.W.3d 591, 592–93 (Tex. Crim. App. 2012); *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999) ("A substantial risk of failure accompanies an appellant's claim of ineffective assistance of counsel on direct appeal."). The Court of Criminal Appeals has repeatedly stated that trial counsel "should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective." *Menefield*, 363 S.W.3d at 593 (quoting *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005)). When trial counsel is not provided an opportunity to explain his actions, we will not find that counsel's performance was deficient unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Id.* (quoting *Goodspeed*, 187 S.W.3d at 392).

B.     Analysis

Pineda is unable to overcome the presumption that his attorney provided effective assistance of counsel because the record does not contain an explanation of his attorney's trial strategy. He also has not shown that the forensic report of his

---

[1]     Claims of ineffective assistance of counsel rejected on direct appeal "due to lack of adequate information may be reconsidered on an application for a writ of habeas corpus." *Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011).

cell phone was material or exculpatory evidence or that the State acted in bad faith. On this record, we cannot say that Pineda's attorney's decision not to request a spoliation instruction was below the standard of prevailing professional norms.

"Spoliation concerns the loss or destruction of evidence." *Guzman v. State*, 539 S.W.3d 394, 401 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd) (citing *Torres v. State*, 371 S.W.3d 317, 319 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd)). When the State fails to preserve material, exculpatory evidence, the State commits a due process violation, *see Arizona v. Youngblood*, 488 U.S. 51, 57–58 (1988); *Zapata v. State*, 449 S.W.3d 220, 228–29 (Tex. App.—San Antonio 2014, no pet.), and its good or bad faith in doing so is not relevant. *Ex parte Napper*, 322 S.W.3d 202, 229 (Tex. Crim. App. 2010) (orig. proceeding). On the other hand, when spoliation concerns "potentially useful evidence," the defendant bears the burden of establishing that the State lost or destroyed the evidence in bad faith. *See Youngblood*, 488 U.S. at 57–58; *Napper*, 322 S.W.3d at 229; *Torres*, 371 S.W.3d at 319–20. "'Bad faith' is more than simply being aware that one's action or inaction could result in the loss of something that is recognized to be evidence." *Napper*, 322 S.W.3d at 238. It "entails some sort of improper motive, such as personal animus against the defendant or a desire to prevent the defendant from obtaining evidence that might be useful." *Id.*; *Guzman*, 539 S.W.3d at 402. Absent evidence of bad faith, a spoliation instruction is not required. *See Youngblood*, 488

8

U.S. at 57–58; *Snell v. State*, 324 S.W.3d 682, 684 (Tex. App.—Fort Worth 2010, no pet.) (holding no error in failing to include spoliation instruction in jury charge because there was no claim of bad faith on part of State).

Pineda does not allege that the evidence contained in the forensic report of his cell phone was material or exculpatory. He also does not allege that the State acted in bad faith. For the trial court to have committed error in overruling a request by appellant's counsel for a spoliation instruction, the evidence must have been material or exculpatory or the State must have acted in bad faith in failing to take steps to preserve the forensic report. *Hines v. State*, No. 14-15-00325-CR, 2016 WL 2935636 at *3 (Tex. App.—Houston [14th Dist.] May 17. 2016, no pet.) (mem. op., not designated for publication) (holding no ineffective assistance of counsel when there was no evidence of bad faith by State to support spoliation instruction); s*ee White v. State*, 125 S.W.3d 4, 43–44 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd) (concluding that trial court did not err in denying appellant's request for spoliation instruction when appellant made no showing that State acted in bad faith in failing to preserve potentially useful evidence). Since the trial court would not have erred in denying the request, trial counsel's failure to request a spoliation instruction was not so outrageous that no competent attorney would have engaged in it. *See Goodspeed*, 1187 S.W.3d at 392.

Even if an instruction to disregard would have been appropriate, we do not have a sufficient record on direct appeal from which to discern whether counsel had a reasonable trial strategy for not requesting a limiting instruction. A trial attorney may reasonably decide, as part of trial strategy, not to request a limiting instruction because a limiting instruction may bring unwanted attention to other aspects of the case. *See McNeil v. State*, 452 S.W.3d 408, 415 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd) (stating that it was reasonable trial strategy to omit request for extraneous offense instruction "because [counsel] did not want any further attention to be drawn to potential extraneous offense or misconduct committed by the defendant"). Here, an instruction could have drawn attention to other missing evidence, such as the gaps in the security footage during the sexual assault. Trial counsel may have strategized that if the jury received a limiting instruction regarding the cell phone, the jury could have applied the same presumption against Pineda regarding the missing surveillance footage. *See Webb v. State*, 995 S.W.2d 295, 301 (Tex. App.—Houston [14th Dist.] 1999, no pet.) (explaining that it was reasonable trial strategy to avoid reminding jury of or drawing attention to other matters that could negatively impact their decision). Alternatively, trial counsel may have chosen not to request the instruction because he knew that the evidence on the phone was damaging to Pineda's case. The record does not indicate what evidence would have been found on the cell phone, and the

State did not intend to use it. Counsel may have chosen not to request the instruction because he did not want to incentivize the State to call a forensic expert to retrieve the unavailable report and introduce it into evidence.

On this record, we cannot say that trial counsel's conduct was so outrageous that no competent attorney would have engaged in it. *Goodspeed*, 187 S.W.3d at 392. Pineda has not established that trial counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. *Strickland*, 466 U.S. at 687–88. Having determined that Pineda failed to establish the first prong of the *Strickland* test, we need not consider whether the allegedly deficient performance prejudiced his defense. *See Williams*, 301 S.W.3d at 687. We overrule Pineda's issue on appeal.

## Conclusion

We affirm the judgment of the trial court.

Peter Kelly
Justice

Panel consists of Justices Kelly, Farris, and Radack.[2]

Do not publish. TEX. R. APP. P. 47.2(b).

---

[2] The Honorable Sherry Radack, Senior Justice, Court of Appeals, First District of Texas at Houston, sitting by assignment.

11